# United States Court of Appeals
## For the Eighth Circuit

No. 13-2613

National Parks Conservation Association; Minnesota Center for Environmental Advocacy; Friends of the Boundary Waters; Voyageurs National Park Association; Fresh Energy; Sierra Club

*Plaintiffs - Appellees*

v.

United States Environmental Protection Agency; Lisa P. Jackson, in her official capacity as EPA Administrator

*Defendants*

Northern States Power Company Minnesota, doing business as Xcel Energy

*Movant - Appellant*

Appeal from United States District Court
for the District of Minnesota - Minneapolis

Submitted: March 12, 2014
Filed: July 23, 2014

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

SHEPHERD, Circuit Judge.

Six environmental protection groups (the Environmental Groups) sued the EPA in an effort to impose emission-control technology on Northern States Power Company's (NSP) Sherburne County power plant (Sherco). NSP moved to intervene. The district court denied NSP's motion. We reverse the district court's order and hold that NSP has standing to intervene and is entitled to intervene as of right.

I.

The Clean Air Act (CAA) declared a national goal of remedying and preventing man-made visibility impairments in mandatory class I Federal areas. See 42 U.S.C. § 7491(a)(1). The EPA promulgated its CAA regulations in two phases. In phase one, the EPA targeted visibility impairments that could be traced to a single or small number of sources. In phase two, the EPA targeted the broader "regional haze" problem. This case focuses on phase one. Under the CAA's cooperative-federalism scheme, the EPA directs states to submit state implementation plans "to assure reasonable progress toward" the CAA's national visibility goals. See Visibility Protection for Federal Class I Areas, 45 Fed. Reg. 80,084, 80,086 (Dec. 2, 1980). If a state fails to properly file an implementation plan, then the EPA is authorized to promulgate its own federal implementation plan. See 42 U.S.C. § 7491(b); see also 42 U.S.C. § 7410(c)(1). Because Minnesota failed to amend its CAA implementation plan in response to EPA rule changes, the EPA was vested with the authority to impose a federal implementation plan.

Phase one of the EPA's plan is directed at reducing visibility impairment "reasonably attributable" to a single or small group of sources. See 40 C.F.R. § 51.300; 45 Fed. Reg. at 80,086-87. EPA guidance provides a three-step process to implement phase one. See 45 Fed. Reg. at 80,086-87; see also 40 C.F.R. § 51.302(c); see also Ctr. Ariz.Water Conservation Dist. v. U.S. E.P.A., 990 F.2d 1531, 1535 (9th Cir. 1993). First, a Department of the Interior (DOI) Federal Land Manager must determine that a visibility impairment exists within a class I area. Second, if a visibility impairment is identified, then a determination must be made that "an existing

Appellate Case: 13-2613    Page: 2    Date Filed: 07/23/2014 Entry ID: 4178046

stationary facility" "may reasonably be anticipated to cause or contribute" to the impairment that "is reasonably attributable" to that facility, or in CAA parlance, the visibility impairment must be a RAVI (reasonably attributable visibility impairment). See 40 C.F.R. § 51.302(c)(4)(i). Third, once a RAVI is identified, then the EPA must determine the "best available retrofit technology," or BART, applicable to the RAVI's source. See 40 C.F.R. § 51.301. The EPA, the Environmental Groups, and NSP dispute the specifics of this process, and the underlying lawsuit centers on that dispute.

Michigan's Isle Royale National Park and Minnesota's Voyageurs National Park are mandatory class I Federal areas. See 40 C.F.R. §§ 81.414, .415. In 2009, the DOI certified that existing visual impairments at the two parks were reasonably attributable to pollution emissions from NSP's Sherco facility. Despite the DOI's certification, the EPA opted to defer action on the impairments to provide an additional opportunity for public comment. See Approval and Promulgation of Air Quality Implementation Plans, 77 Fed. Reg. 34,801, 34,801, 34,806 (June 12, 2012).

The Environmental Groups, frustrated by the EPA's inaction on Sherco, filed a citizen suit against the EPA in December 2012 to compel the EPA to act. According to the Environmental Groups, visibility impairment exists at each park, and:

> The Department of Interior's certification triggered a mandatory, non-discretionary duty on behalf of EPA to promulgate modern pollution control limits (known as "RAVI BART," reasonably attributable visibility impairment best available retrofit technology) for Sherco to remedy such impairment. Because EPA has failed to promulgate RAVI BART for Sherco without unreasonable delay, Plaintiffs bring this action to secure an order from the Court that directs EPA to issue RAVI BART for Sherco.

Compl. at 1, ¶ 1. This opening paragraph succinctly sets forth the Environmental Groups' position throughout their complaint. See, e.g., id. at 9, ¶ 38 ("The Department of Interior's certification triggered a mandatory duty on behalf of EPA to require Xcel Energy to install RAVI BART at Sherco to resolve its visibility impacts."); Id. at 11, ¶ 47 ("Plaintiffs are entitled to an order from this Court directing EPA to promulgate a final and complete RAVI BART determination for Sherco by a date certain."); Id. at 11, ¶ 48(3) ("Plaintiffs pray that this Court . . . [o]rder the Administrator to issue a final RAVI BART determination for Sherco . . . ."). Simply stated, their complaint contends that the DOI certification requires the EPA to impose retrofit technology on Sherco. The scope of EPA rulemaking in the Environmental Groups' view would be limited to the narrow question of what technology to impose on Sherco.

Shortly after the Environmental Groups filed their complaint, NSP moved to intervene under Federal Rule of Civil Procedure 24. NSP asserted that the emission-reduction technology that the Environmental Groups seek to impose on Sherco through the underlying litigation could cost NSP and its customers in excess of $280 million. NSP intended to argue, if permitted to intervene, that the DOI certification cannot circumvent the second and third steps of the RAVI BART process. Instead, the EPA must through rulemaking, determine (1) Sherco is a source causing RAVI at the two parks and (2) the proper BART technology, if any, to impose. In the Environmental Groups' brief in opposition to NSP's motion to intervene and at the hearing on the motion, the Environmental Groups recharacterized their case, perhaps recognizing the breadth of their complaint. Under the Environmental Groups' markedly different, modified view of the case, they only urge the EPA to begin rulemaking. They argue that once rulemaking begins, the EPA could act on the DOI's certification by *either* confirming that Sherco emissions are causing RAVI at the two parks and proceed to determine BART, *or* the EPA could determine that Sherco emissions are not causing RAVI at the two parks and, presumably, the inquiry into Sherco would end.

Appellate Case: 13-2613     Page: 4     Date Filed: 07/23/2014 Entry ID: 4178046

The district court accepted the Environmental Groups' modified view and denied NSP's motion to intervene. The court supported its decision by considering the EPA's regulations which, according to the court, would require the EPA to confirm that Sherco is in fact a RAVI source before moving forward to determine what emissions technology to impose. With the modified view of the case guiding the district court's analysis, it concluded that the only question at issue was whether the DOI's certification letter required the EPA to begin rulemaking. Thus, according to the court, the possibility that a court order could impose direct financial injury on NSP was eliminated. Because NSP did not have standing to litigate this remaining procedural question, and because the EPA could adequately represent NSP's interest in it, the court held that intervention was inappropriate. NSP timely filed this appeal. The district court's order denying NSP's motion to intervene of right is an immediately appealable, final order. Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1092 n.2 (8th Cir. 2011).

II.

This appeal raises three interrelated issues. First, what information should a court consider when determining a proposed intervenor's stake in pending litigation, and how should a court view that information? From this perspective we assess the remaining issues. Does NSP have Article III standing to intervene? And, is NSP entitled to intervene as of right?

A.

The preliminary issue is what information should a court consider when assessing a motion to intervene and how should that information be considered. To reach its decision to deny NSP's motion to intervene, the district court focused on the request for relief the Environmental Groups emphasized at the motion to intervene hearing and in their motion briefing. The court's decision to accept the Environmental Groups' tempered argument was improper. Instead, in analyzing both Article III standing and Rule 24, the court should have focused on the Environmental Groups'

-5-

complaint and the allegations in NSP's motion to intervene. Moreover, by accepting the Environmental Groups' modified view instead of the view espoused in the complaint, the court failed to assess NSP's motion to intervene in a light most favorable to the prospective intervenor.

A court ruling on a motion to intervene must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor. See Tarek ibn Ziyad Acad., 643 F.3d at 1092; United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009). This standard is identical to the standard applied to a typical motion to dismiss for lack of jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). When the allegations in the underlying controversy are relevant—for instance when a lawsuit ultimately targets the prospective intervenor's interests or rights—the court should focus its attention on the pleadings because "standing is to be determined as of the commencement of suit." See id. at 570 n.5. Viewing the complaint holistically, the court should assume the plaintiff will receive the relief it seeks and, from that assumption, assess the sufficiency of the prospective intervenor's motion. See Tarek ibn Ziyad Acad., 643 F.3d at 1092; South Dakota v. Ubbelohde, 330 F.3d 1014, 1024-25 (8th Cir. 2003); accord Fund For Animals, Inc. v. Norton, 322 F.3d 728, 733-34 & n.5 (D.C. Cir. 2003) (examining the plaintiff's complaint to determine whether a prospective intervenor had standing); Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1116 (10th Cir. 2002) (analyzing the plaintiff's complaint to determine whether the prospective intervenors satisfied Rule 24(a)(2)'s impairment requirement).

Allowing litigants to defeat a motion to intervene by expanding or constricting the scope of a lawsuit through allegations at a motion hearing or arguments in a brief would promote gamesmanship and create uncertainty for prospective intervenors. Under such a scenario, as the litigants adjust their requests for relief, the prospective intervenor's stake in the controversy becomes a moving target, eliminating any fixed

-6-

Appellate Case: 13-2613   Page: 6   Date Filed: 07/23/2014 Entry ID: 4178046

method the court or the prospective intervenor could use to assess whether intervention is appropriate. Moreover, by focusing on the litigants' post-pleading posturing, a court overlooks that "standing is to be determined as of the commencement of suit." See Defenders of Wildlife, 504 U.S. at 570 n.5. By contrast, when a court focuses its intervention analysis on the underlying pleadings, it provides a prospective intervenor a stable source to determine whether intervention is prudent. The Environmental Groups' complaint seeks "to secure an order from the Court that directs EPA to issue RAVI BART for Sherco" because "[t]he Department of Interior's certification triggered a mandatory, non-discretionary duty on behalf of EPA to promulgate modern pollution control limits . . . for Sherco." Compl. at 1, ¶ 1. In deciding whether to intervene, NSP was required to accept the possibility that the court could issue an order compelling the EPA to "issue RAVI BART for Sherco." This possibility is critical. If the Environmental Groups were unhappy with their complaint, then they could have amended it to more carefully tailor its scope. For the intervention determination, the Environmental Groups' informal attempts to dramatically alter their request for relief fail to move us from the requisite focus on their complaint. Cf. Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1139-40 (8th Cir. 2014) (concluding that a plaintiff could not use a brief in opposition to a motion for summary judgment to unilaterally withdraw his federal claims to eliminate jurisdiction). Whether the applicable regulations actually support the Environmental Groups' claims is not relevant for purposes of NSP's motion to intervene, see ASARCO, Inc. v. Kadish, 490 U.S. 605, 624 (1989), unless their allegations and requests for relief based on those regulations "are frivolous on their face," see Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999).

B.

Primarily guided by the Environmental Groups' complaint, we now determine whether NSP has Article III standing and satisfies the requirements of Rule 24. We

-7-

review the district court's standing and intervention[1] determinations de novo. Tarek ibn Ziyad Acad., 643 F.3d at 1092; Ubbelohde, 330 F.3d at 1024.

In the Eighth Circuit, a prospective intervenor must "establish Article III standing in addition to the requirements of Rule 24." See Metro. St. Louis Sewer Dist., 569 F.3d at 833. The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability. See id. at 833-34. First, the prospective intervenor "must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" Id. at 834 (quoting Curry v. Regents of the Univ. of Minn., 167 F.3d 420, 422 (8th Cir. 1999)). Second, the prospective intervenor must establish "a causal connection between the injury and the conduct complained of," Defenders of Wildlife, 504 U.S. at 560; in other words, the intervenor's alleged injury must be "fairly traceable to the defendant's conduct." Metro. St. Louis Sewer Dist., 569 F.3d at 834. And, third, the prospective intervenor must establish that a "favorable decision will likely redress the injury." Id. NSP has satisfied the three elements of Article III standing.

We first address NSP's injury. The Environmental Groups' complaint seeks to impose costly pollution controls on NSP's Sherco power plant. NSP estimates that the technology the Environmental Groups seek to impose on it could cost NSP and its customers more than $280 million. Mem. in Supp. of Mot. to Intervene at 2. Risk of direct financial harm establishes injury in fact. See Eckles v. City of Corydon, 341 F.3d 762, 768 (8th Cir. 2003). Unlike in Metropolitan St. Louis Sewer District, 569 F.3d at 836, where the potential intervenor's financial injury was contingent on several conditions, if the court here grants the Environmental Groups' relief, then NSP would "unavoidably be harmed economically." Id. Even if the timing and extent of NSP's financial injury from the compelled installation of emission-control

---

[1] The question of timeliness is not raised in this appeal. Cf. Tarek ibn Ziyad Acad., 643 F.3d at 1093.

-8-

Appellate Case: 13-2613    Page: 8    Date Filed: 07/23/2014 Entry ID: 4178046

technologies on Sherco remains to be determined, NSP has still established standing. In Ubbelohde, this court held that downstream water users "presented sufficient evidence of a threatened injury" because of the potential that the Army Corps of Engineers would reduce downstream flows. 330 F.3d at 1024-25. Here, like in Ubbelohde, if the court grants the relief requested in the complaint, the threat of injury to NSP is real. NSP has adequately alleged a concrete, particularized, and imminent injury to a legally protected interest.

Next, we consider the final two elements, causation and redressability. To satisfy causation, NSP must show that its "'alleged injury is fairly traceable to the defendant's conduct.'" Tarek ibn Ziyad Acad., 643 F.3d at 1092 (quoting Metro. St. Louis Sewer Dist., 569 F.3d at 834). Analogous to the intervenors in Tarek ibn Ziyad Academy and Ubbelohde, NSP can trace its injury to the EPA through the would-be court order if the Environmental Groups obtain relief. See id. at 1093; Ubbelohde, 330 F.3d at 1024-25. Because the EPA would be "compelled to cause the alleged injury to [NSP] if the [Environmental Groups] prevail[]," NSP satisfies the causation element. See Tarek ibn Ziyad Acad., 643 F.3d at 1093. Lastly, NSP's injury can be redressed. NSP seeks to prevent the Environmental Groups from obtaining an order imposing BART on Sherco. If NSP prevails, it avoids, or at least delays, the costly technology the Environmental Groups seek.

C.

Satisfied that NSP has sufficient Article III standing to intervene, we must now decide whether NSP complies with the requirements of Rule 24. Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) "claims an interest relating to the property or transaction that is the subject of the action"; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties. See Fed. R. Civ. P. 24(a)(2); see also South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d

-9-

783, 785 (8th Cir. 2003). Rule 24 should be construed liberally, with all "doubts resolved in favor of the proposed intervenor." Turn Key Gaming, Inc., 164 F.3d at 1081. Because no one disputes the timeliness of NSP's motion to intervene, we start with the second element, whether NSP has "a recognized interest in the subject matter of the litigation." See Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996).

NSP's property interests in Sherco and its financial stake in the litigation are sufficient to satisfy the recognized interest requirement of Rule 24(a)(2). If the Environmental Groups obtain relief, NSP may be directed to purchase and install emission-control technology at Sherco. A potential judgment therefore implicates two recognized interests of NSP. First, NSP's property interests in Sherco, see Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997-98 (8th Cir. 1993) (holding that private landowners had a recognized interest at stake in a land-dispute litigation between a Band of Chippewa Indians and the State of Minnesota because the litigation would determine the Band members' rights to hunt, fish, and gather on the private landowners' property), and second, NSP's direct financial interests, see Utahns for Better Transp., 295 F.3d at 1115 ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."). When a third party files suit to compel governmental agency action that would directly harm a regulated company, the company's economic interests in the lawsuit satisfy Rule 24(a)(2)'s recognized-interest requirement. See, e.g., Kleissler v. U.S. Forest Serv., 157 F.3d 964, 972 (3d Cir. 1998) (holding that timber companies had an interest in a lawsuit aimed at changing their methods of timber-cutting); Sierra Club v. Glickman, 82 F.3d 106, 109 (5th Cir. 1996) (per curiam) (holding that a farming federation had a sufficient interest to intervene because the plaintiffs' complaint sought, among other things, to enjoin the USDA from supporting the farmers' pumping activity and to order the USDA to establish water-reduction programs). This case is no different. The Environmental Groups seek to change the emission-control technology at Sherco. NSP's interests are the ultimate target, and it has a recognized interest in this dispute sufficient to satisfy Rule 24(a)(2).

Next, disposition of the lawsuit "'may as a practical matter impair or impede'" NSP's ability to protect its interest. KPERS v. Reimer & Koger Assocs. Inc., 60 F.3d 1304, 1307 (8th Cir. 1995) (quoting Fed. R. Civ. P. 24(a)(2)). The Environmental Groups have brought suit to obtain a court order compelling the EPA to act on its "mandatory duty . . . to require [NSP] to install RAVI BART at Sherco." Compl. at 9, ¶ 38. Putting the merits of the Environmental Groups' argument aside, Turn Key Gaming, Inc., 164 F.3d at 1081, if the Environmental Groups are successful in receiving this relief, NSP's recognized interests as examined above would be directly impacted by the court order. See Utahns for Better Transp., 295 F.3d at 1116 (reasoning that the intervenor satisfied the impairment element of Rule 24(a)(2) by focusing its attention on the relief sought in the complaint against the identified interest); see also Natural Res. Def. Council v. Costle, 561 F.2d 904, 909 (D.C. Cir. 1977) (examining "the 'practical consequences' of denying intervention, even where the possibility of a future challenge to the regulation remained available").

Finally, NSP's interests are not adequately represented by the EPA. A proposed intervenor typically need only "carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." Mille Lacs Band of Chippewa Indians, 989 F.2d at 999. Under the concept of *parens patriae*, however, when one of the existing parties is a governmental agency "and the case concerns a matter of 'sovereign interest,' the bar is raised, because *in such cases* the government is 'presumed to represent the interests of all its citizens.'" Mausolf, 85 F.3d at 1302 (quoting Mille Lacs Band of Chippewa Indians, 989 F.2d at 1000). The *parens patriae* presumption of adequate representation is triggered only "to the extent [the proposed intervenor's] interests coincide with the public interest." Chiglo v. City of Preston, 104 F.3d 185, 187-88 (8th Cir. 1997).

Here, NSP's interests in its Sherco facility diverge from the EPA's general interests in assuring that the proper regulatory procedures are followed. Both NSP and the EPA argue that the Environmental Groups cannot bypass the proper steps

-11-

required to impose RAVI BART on Sherco. But NSP's interest in the litigation is more than mere procedural formality. NSP owns the target power plant; it "is seeking to protect a more narrow and 'parochial' financial interest not shared by [the general public]." Mille Lacs Band of Chippewa Indians, 989 F.2d at 1000 (quoting Dimond v. District of Columbia, 792 F.2d 179, 193 (D.C. Cir. 1986)). The EPA is ultimately tasked with the much broader responsibility of executing the CAA's goal of preventing and remedying visibility impairments in mandatory class I Federal areas. In carrying out this responsibility, the EPA would "shirk its duty were it to advance the narrower interest of a private entity." See Conservation Law Found. of New England, Inc. v. Mosbacher, 966 F.2d 39, 44 (1st Cir. 1992). Moreover, speaking to practical concerns, NSP can provide expertise to the issues in this dispute, see Utahns for Better Transp., 295 F.3d at 1117, and NSP cannot be assured that the EPA's current position "will remain static or unaffected by unanticipated policy shifts," Kleissler, 157 F.3d at 974. With these considerations in mind, we are satisfied that NSP's interests are not adequately represented by the existing parties, and thus, NSP is entitled to intervene as of right under Rule 24(a).

### III.

For the reasons stated, we reverse the district court's order denying NSP's motion to intervene and remand with instruction to enter an order granting NSP's motion for leave to intervene as of right.

_____

-12-

Appellate Case: 13-2613   Page: 12   Date Filed: 07/23/2014 Entry ID: 4178046